# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RECEIVED

FEB 1 2013

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States of America ex rel. )

JOHNNIE Hummer K-65650 )
(Full name and prison number)
(Include name under which convicted)

PETITIONER )

vs. )

MICHAEL ATKISON )
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and )

**(Fill in the following blank only if judgment
attacked imposes a sentence to commence
in the future)** )

ATTORNEY GENERAL OF THE STATE OF )

_____ )
(State where judgment entered) )

13CV817
JUDGE LEINENWEBER
MAGISTRATE COLE

Case Number of State Court Conviction:

92 CR 2023601

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: CIRCUIT COURT OF COOK COUNTY, ILLINOIS, 2650 S. CALIFORNIA, CHICAGO, ILL 60608

2. Date of judgment of conviction: FEBRUARY 8, 1998 Sentenced MARCH 3, 1998

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known) FIRST DEGREE Murder, ATTEMPT ARMED Robbery

4. Sentence(s) imposed: NATURAL LIFE plus 5 YEARS

5. What was your plea? (Check one)
   (A) Not guilty (X)
   (B) Guilty ( )
   (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

N/A

Revised: 7/20/05

**PART I – TRIAL AND DIRECT REVIEW**

1. Kind of trial: (Check one):  Jury (X)  Judge only (  )

2. Did you testify at trial?  YES (  )  NO  (X)

3. Did you appeal from the conviction or the sentence imposed?  YES (X)  NO (  )

   (A)  If you appealed, give the

   (1)  Name of court:  APPELLATE COURT OF Illinois 1ST DIST.

   (2)  Result:  AFFIRMED CONVICTION

   (3)  Date of ruling:  December 26, 2000

   (4)  Issues raised:  1. WAS NOT PROVEN guilty; 2. TRIAL COURT'S PRECLUSION OF CROSS-EXAMINING A WITNESS MENTAL HEALTH. 3. Admission OF Evidence OF OTHER CRIME.

   (B)  If you did not appeal, explain briefly why not:  N/A

4. Did you appeal, or seek leave to appeal, to the highest state court?  YES (  )  NO (X)

   (A)  If yes, give the

   (1)  Result:  N/A

   (2)  Date of ruling:  N/A

   (3)  Issues raised:  N/A

   (B)  If no, why not:  My lAwYer Never TolcL ME.

5. Did you petition the United States Supreme Court for a writ of *certiorari*?  Yes (  )  No (X)

   If yes, give (A) date of petition:  N/A  (B) date *certiorari* was denied:  N/A

Revised: 7/20/05

Aug 21, 2012  6:00 PM

## PART II – COLLATERAL PROCEEDINGS

1.  With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

    YES (X)   NO ( )

    With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

    A.  Name of court: _Cook County Circuit Court_

    B.  Date of filing: _November 14, 2000_

    C.  Issues raised: _Due Process Violation State Conviction brought About by Methods That Offend A Sense of Justice; Ineffective Assistance of Trial & Appellate Counsel_

    D.  Did you receive an evidentiary hearing on your petition?   YES (X)   NO ( )

    E.  What was the court's ruling? _Post-Conviction Relief Denied_

    F.  Date of court's ruling: _August 26, 2009_

    G.  Did you appeal from the ruling on your petition?   YES (X)   NO ( )

    H.  (a)   If yes, (1) what was the result? _Affirm Judgment of Circuit Court_

    (2) date of decision: _December 12, 2011_

    (b)   If no, explain briefly why not: _N/A_

    I.  Did you appeal, or seek leave to appeal this decision to the highest state court?

    YES (X)   NO ( )

    (a)   If yes, (1) what was the result? _Denied PLA_

    (2) date of decision: _3·28·12_

    (b)   If no, explain briefly why not: _N/A_

3

Revised: 7/20/05

## PART II - COLLATERAL PROCEEDINGS

1. WITH RESPECT TO THIS CONVICTION OR SENTENCE, HAVE YOU FILED A POST-CONVICTION IN STATE COURT? YES (X) NO ( )

WITH RESPECT TO EACH POST-CONVICTION PETITION GIVE THE FOLLOWING INFORMATION.

A. NAME OF COURT: <u>COOK COUNTY CIRCUIT COURT</u>
B. DATE OF FILING: <u>OCTOBER 16, 2012</u>
C. ISSUES RAISED: <u>THAT A CONFESSION USED TO SECURE HIS CONVICTION AND SENTENCE WAS THE INVOLUNTARY PRODUCT OF TORTURE OR COERCION.</u>

D. DID YOU RECEIVE AN EVIDENTIARY HEARING ON YOUR PETITION? YES (X)

E. WHAT WAS THE COURT'S RULING? <u>THERE IS A SCHEDULED COURT DATE FOR THE EVIDENTIARY HEARING</u>!!

3A

## PART II — COLLATERAL PROCEEDINGS

1. WITH RESPECT TO THIS CONVICTION OR SENTENCE, HAVE YOU FILED A POST-CONVICTION IN STATE COURT? YES (X)

WITH RESPECT TO EACH POST-CONVICTION PETITION GIVE THE FOLLOWING INFORMATION.

A. NAME OF COURT: Cook County Circuit Court

B. DATE OF FILING:

C. ISSUES RAISED: PROSECUTORIAL MISCONDUCT, PLAIN ERROR, DUE PROCESS VIOLATION, INEFFECTIVE ASSISTANCE OF COUNSEL.

D. DID YOU RECEIVE AN EVIDENTIARY HEARING ON YOUR PETITION? Its Still Pending

E. WHAT WAS THE COURT'S RULING? Its Still Pending.

F. DATE OF COURT'S RULING: Its Still Pending

3B

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES (X)      NO ( )

    A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

      1.   Nature of proceeding    HABEAS CORPUS

      2.   Date petition filed    June 19, 2003

      3.   Ruling on the petition    Denied

      4.   Date of ruling    January 16, 2004

      5.   If you appealed, what was the ruling on appeal?    Affirmed Circuit Court Ruling

      6.   Date of ruling on appeal    June 22, 2007

      7.   If there was a further appeal, what was the ruling?    Denied

      8.   Date of ruling on appeal    September 26, 2007

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES (X)    NO ( )

    A. If yes, give name of court, case title and case number: Plummer Vs. Atchison
12 C 8305 Northern District Of Illinois

    B. Did the court rule on your petition? If so, state

      (1) Ruling: Dismissed Without Prejudice

      (2) Date: 1-9-2013

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES (X)      NO ( )

    If yes, explain: Relief From Judgement, Class Action Post-Conviction Petition And Successive Post Conviction Petition. All Pending In Cook County Circuit Court.

4

Revised: 7/20/05

# PART III - PETITIONER'S CLAIMS

## (A) Ground One: FUNDAMENTAL MISCARRIAGE OF JUSTICE

THE PETITIONER A JUVENILE WAS INCARCERATED IN A JUVENILE FACILITY ON CASE NUMBER 91-CR-2145/01 WITH COURT APPOINTED COUNSEL.

WHILE INCARCERATED DETECTIVES WILLIAM FOLEY AND MICHAEL CLANCY FRAUDENTLY OBTAINED A COURT ORDER CLAIMING THEY NEEDED THE PETITIONER FOR A PHYSICAL LINEUP SEE EXHIBIT 1.

THE STATE'S ATTORNEY OFFICE TYPED THE COURT ORDER.

AFTER THE DETECTIVES FOLEY & CLANCY PROCURED CUSTODY OF THE PETITIONER. THE DETECTIVES UNLAWFULLY INTERROGATED AND QUESTIONED THE PETITIONER WITHOUT COUNSEL. SEE EXHIBIT 3.

- OBTAINED AN ILLEGAL STATEMENT THE STATE'S ATTORNEY KNEW UNDER THE CIRCUMSTANCES PETITIONER WAS BEING INTERROGATED WAS IN VIOLATING OF HIS STATE & FEDERAL CONSTITUTIONAL RIGHTS.

NEVERTHELESS THE STATE ATTORNEY PRESENTED PETITIONER'S (TAINTED) ILLEGAL OBTAINED STATEMENT TO A GRAND JURY. SEE EXHIBIT 4

SUBSEQUENTLY, THE PETITIONER WAS INDICTED FOR FIRST DEGREE MURDER & ATTEMPT ARMED
- ROBBERY.

TRIAL COURT SUPPRESSED PETITIONER'S STATEMENT DUE TO INQURIES. PRIOR TO TRIAL. SEE EXHIBIT 2.

PETITIONER WAS TAKEN TO TRIAL UPON A FATAL DEFECTIVE/DEFICIENT INDICTMENT & SUBSEQUENTLY CONVICTED OF FIRST DEGREE MURDER & ATTEMPTED ARMED ROBBERY. SEE EXHIBIT 10

- THE STATE'S ATTORNEY THAT TOOK THE PETITIONER'S STATEMENT ON AUGUST 13, 1992. COMMITTED SUICIDE SEE EXHIBIT 14.

(B) Ground Two: PROSECUTORIAL MISConduct

The Petitioner A Juvenile WAS INCARCARATED IN A Juvenile Facility On Case number 91-CR-245101 WITH Appointed Counsel.

On August 6, 1992, WHILE INCARCARATED Detectives William Foley And Michael Clancy Fraudently OBTAINED A COURT ORDER Claiming They need THE Petitioner For A PHYSICAL Lineup. SEE EXHIBIT 1

THE STATE'S Attorney Office Typed THE COURT ORDER.

On August 13, 1992, After THE Detectives Foley And Clancy Procured Custody Of THE Petitioner. THE Detectives UNlAwFully INTERROGATED And QUESTIONED THE Petitioner WITHOUT Counsel, OBTAINED An Illegal STATEMENT

On August 17, 1992, Judge Robert P. BASTONE EXPlAined WHY He Signed THE COURT ORDER. Authorizating THE RElEASE Of THE Petitioner From THE Juvenile Facility TO THE CUSTODY Of Two Detectives. SEE EXHIBIT 2

On September 1, 1992, THE STATE's Attorney uses Petitioner's Illegally Obtained STATEMENT I.E., DETECTIVE MICHAEL CLANCY TESTIMONY BEFORE THE GRAND JURY TO OBTAIN A TRUE BILL OF INDICTMENT FOR FIRST DEGREE MURDER AND ATTEMPTED ARMED ROBBERY NO OTHER EVIDENCE WAS USED. SEE EXHIBIT 4

On September 7, 1997, TRIAL COURT Suppressed Petitioner's STATEMENT. SEE EXHIBIT 7.

On February 3, 1998, TRIAL COURT READ "A TRUE BILL OF INDICTMENT" OBTAINED ON SEPTEMBER 1, 1992, FOR FIRST DEGREE Murder And ATTEMPTED Armed Robbery BEFORE A Sworned IN JURY TO COMMENCE "JURY TRIAL PROCEEDING". SEE EXHIBIT 10.

On FEBRUARY 9, 1998, A VERDICT OF Guilty WAS RENDER BY THE JURY FOR FIRST DEGREE Murder & ATTEMPTED Armed Robbery. SEE EXHIBIT ___ . THIS ISSUE IS Pending IN STATE COURT MORE FACTS ARE FOUTH coming.

● (C) Ground Three: 4/14/11 Error

On August 13, 1992, Detectives William Foley And Michael Clancy Obtained An Illegal Statement From The Petitioner. See Exhibit __

On September 1, 1992, The State's Attorney Uses Petitioner's Illegal Obtained Statement (Mentioned Above) See Exhibit 4 To Obtain A True Bill Of Indictment For First Degree Murder And Attempted Armed Robbery. No Other Evidence Was Use. See ● Exhibit 4

On September 7, 1997, Trial Court Suppressed Petitioner's Statement Mentioned Above. See Exhibit 7

On February 3, 1998, Trial Court Read "A True Bill Of Indictment" Obtained On September 1, 1992, For First Degree Murder And Attempted Armed Robbery Before A Sworn In Jury To Commence "Jury Trial Proceeding" See Exhibit 10

●

On February 9, 1998, A verDict of Guilty was Render by the jury for first Degree murDer and Attempted Armed Robbery. See Exhibit ___ (the Record in this case)

On March 3, 1998, Trial court sentenced petitioner to NATURAL life plus 5 years. In the Illinois Department of Corrections. See Exhibit ___ (the Record in this case)

Petitioner was Take to Trial, convicted And sentence without a formal, sufficient indictment. This issue is _pending_ in State court more _facts_ are forth coming.

(D) Ground Four: THAT A CONFESSION USED TO SECURE HIS CONVICTION And SENTENCE WAS THE INVOLUNTARY Product OT TORTURE OR PHYSICAL COERCION.

Petitioner Stated He WAS Physically Beaten by Detectives William Foley & Michael Clancy in August 07 1992 At Area 3 Police STATION.

On September 7, 1997, Trial Court Suppressed Petitioner's STATEMENT Due To His inquries. See Exhibit I. However, Petitioner's STATEMENT WAS used to Obtain A True Bill OT Indictment For FIRST DEGREE Murder And ATTempt Armed Robbery. See Exhibit 4

This Indictment WAS to TAKE THE Petitioner To TRIAl, Where He WAS Convicted And Sentence. See Exhibit 10

This Issue is Pending in STATE Court MORE Facts will come Forward.

OBTAINED An Illegal STATEMENT THE STATE'S
ATTORNEY knew Under THE CIRCUMSTANCES
Petitioner WAS BEING Interrogated WAS IN
VIOLATING OF HIS STATE & FEDERAL
CONSTITUTIONAL RIGHTS.

Nevertheless THE STATE ATTORNEY
PRESENTED PETITIONER'S (TAINTED) Illegal
OBTAINED STATEMENT TO A GRAND Jury.
SEE EXHIBIT 4

Subsequently, THE PETITIONER WAS
Indicted For First DEGREE Murder &
ATTEMPTED ARMED Robbery.

TRIAL COURT Suppressed PETITIONER'S
STATEMENT DUE TO INJURIES. PRIOR TO TRIAL.
SEE EXHIBIT 1.

PETITIONER WAS TAKEN TO TRIAL Upon A
FATAL DEFECTIVE/DEFICIENT INDICTMENT &
SubseQuently CONVICTED OF FIRST DEGREE
Murder & ATTEMPTED ARMED Robbery. SEE
EXHIBIT 4

● (E) Ground Five: Ineffective Assistance
Of Trial Counsel

Prior To Trial. Trial Counsel Subpoena
Mental Health Records Of A State's Witness
See Exhibit 8. Trial Counsel Was Informed
By Trial Judge That A letter From Social
Security Was Faxed To Trial Judge
Stating: That The Mental Health Records
Would not Be Available For As much As
60 Days. See Exhibits 9 & 12

● Trial Counsel Proceeded To Trial
Without Waiting 60 Days For The
Availability Of The Mental Health Records.
The Records Revealed State's Witness
Hallucination. See Exhibits 16 17 And 12

The Records Reflects That The Trial
Court Would Have "Allowed" Cross-Examination
Regarding Witness Mental Health Had Trial
Counsel Informed The Court, "Before It
Ruling" That SSA Records Revealed State's
Witness Hallucination. Trial Counsel Failed
● To Obtain Mental Health Records Of A
State's Witness Prior To Trial.

(7) GROUND SIX: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

Appellate Counsel Failure To Raise INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL On DIRECT Appeal. TRIAL COURT PROHIBIT TRIAL COUNSEL FROM CROSS-EXAMINATION OF STATE's WITNESS REGARDING MENTAL HEALTH BECAUSE TRIAL COUNSEL "FAILED" TO INFORMED THE COURT, BEFORE Its RULING, THAT SSA RECORDS REVEALED STATE's WITNESS HALLUCINATION.

(9) GROund SEVEN: INEFFECTIVE ASSISTANCE ASSISTANCE OF TRIAL COUNSEL

TRIAL COUNSEL FAILED TO FILE A MOTION TO DISMISS CHARGES/Indictment WITH PREJUDICE. TRIAL COUNSEL KNEW POLICE lied To Judge BASTONE TO GAIN CUSTODY OF JUVENILE PETITIONER INTERROGATED & QUESTIONED PETITIONER WITHOUT COUNSEL. OBTAINED An IllegAL STATEMENT FROM PETITIONER. THE STATE's Attorney used PETITIONER'S STATEMENT (TAINTED Evidence) TO INDICT PETITIONER'S FOR Murder, ETC.

(H) Ground EIGHT: STATE CONVICTION
BROUGHT ABOUT BY METHODS THAT OFFENDS
A SENSE OF JUSTICE Petitioner's 4TH, 5TH, 6TH
And 14TH Amendments RIGHTS VIOLATED

THE PETITIONER A Juvenile WAS
INCARCARATED IN A Juvenile Facility On CASE
Number 91-CR-2145101 WITH COURT Appointed
COUNSEL.

WHile INCARCARATED DETECTIVES WILLIAM
FOLEY And MICHAEL CLANCY FRAUDENTLY OBTAINED
A COURT ORDER CLAIMING THEY NEEDED THE
PETITIONER FOR A PHYSICAL lineup SEE
EXHIBIT 1.

THE STATE'S ATTORNEY OFFICE TYPED
THE COURT ORDER.

AFTER THE DETECTIVES FOLEY & CLANCY
PROCURED CUSTODY OF THE PETITIONER. THE
DETECTIVES UNLAWFULLY INTERROGATED And
QUESTIONED THE PETITIONER WITHOUT COUNSEL.
SEE EXHIBIT 3

(I) Ground nine: EQUAL PROTECTION VIOLATION

Petitioner's EQUAL PROTECTION WAS VIOLATED when He WAS MALICIOUS Prosecuted And wrongful Convicted. SEE STATEMENT OF FACTS OF GROUNDS ONE And TWO.

(J) GROUND TEN: MISCARRIAGE OF JUSTICE

It WAS A MISCARRIAGE OF JUSTICE FOR THE Petitioner TO BE TRIED, Convicted And SENTENCE WITHOUT A FORMAL, Sufficient INDICTMENT. SEE EXHIBITS 10, 4 & 1

SEE GROUND ONE & TWO FOR STATEMENT OF FACTS.

2. HAVE All Grounds RAISED IN THIS PETITION BEEN PRESENTED TO THE HIGHEST COURT JURISDICTION?

NO (X)

3. IF YOU ANSWERED "NO" TO QUESTION (2), STATE BRIEFLY WHAT GROUNDS WERE NOT SO PRESENTED And WHY not:

THAT A CONFESSION USED TO SECURE HIS CONVICTION And SENTENCE WAS THE INVOLUNTARY PRODUCT OF TORTURE OR PHYSICAL COERCION, PLAIN ERROR, PROSECUTORIAL MISCONDUCT, DUE PROCESS VIOLATION.

NEW DISCOVERED EVIDENCE And NEW LAW. IN THE INTEREST OF JUSTICE & FUNDAMENTAL FAIRNESS OF LAW

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing __Unknown__

(B) At arraignment and plea __Unknown__

(C) At trial __Jean Herigodt__

(D) At sentencing __Jean Herigodt__

(E) On appeal __Thomas Finegan__

(F) In any post-conviction proceeding __Gwendolette Ward Brown__

(G) Other (state): __None__

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )  NO (X)

Name and location of the court which imposed the sentence: __N/A__

Date and length of sentence to be served in the future __N/A__

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: __1·14·2013__
    (Date)

_____
Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

__Johanna Klemmer__
(Signature of petitioner)

__K-65650__
(I.D. Number)

__Menard, Illinois 62259__
(Address)

Revised: 7/20/05

Aug 21, 2012   6:00 PM

# EXHIBITS

1. COURT ORDER TYPED BY STATE'S ATTORNEY OFFICE DATED: AUGUST 6, 1992

2. ERICA FRAZIER STATEMENT. DATED: AUGUST 13, 1992

3. TRANSCRIPTS OF JUDGE BASTONE EXPLAINING WHY HE SIGNED COURT ORDER DATED: AUGUST 17, 1992

4. TRANSCRIPTS OF GRAND JURY PROCEEDING DATED: SEPTEMBER 1, 1992

5. TRANSCRIPTS OF STATE'S ATTORNEY ARGUMENT AT MOTION TO SUPPRESS STATEMENT DENYING INVOLVEMENT DATED: SEPTEMBER 5, 1992

6. TRANSCRIPTS OF DEFENSE COUNSEL AT MOTION TO SUPPRESS STATEMENT "PROVING STATE'S ATTORNEY INVOLVEMENT" DATED: SEPTEMBER 5, 1992

7. TRANSCRIPTS OF TRIAL COURT'S SUPPRESSING PETITIONER'S STATEMENTS DATED: SEPTEMBER 5, 1997

8. DEFENSE COUNSEL SUBPOENAING MENTAL HEALTH RECORDS OF ERICA FRAZIER DATED: DECEMBER 4, 1997

9. LETTER FROM SOCIAL SECURITY OFFICE DATED: FEBRUARY 2, 1998

10. TRIAL COURT READING A NUGATORY INDICTMENT TO SWORN IN JURY DATED: JANUARY 4, 1998

11. ERICA FRAZIER TRIAL TESTIMONY DATED: FEBRUARY , 1998

12. APPELLATE COURT OPINION 2003

13 TRIAL COUNSEL TESTIMONY DURING EVIDENTIARY HEARING PAGES BB57 DATED: AUGUST 26, 2009

14. Feds Investigate Jon Burge's Detectives, Ex-Cook County Prosecutors: Dated July 14, 2011.

15 Appellate Court Opinion 2011.

16 Erica Frazier Mental Health Records.

17 Letter From Social Security Office Dated: February 13, 1998

STATE OF ILLINOIS)
                  )  SS.
COUNTY OF C O O K)

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT,  CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS   )
                                  )   No.91-21451
              vs.                 )
                                  )
     JOHNNIE PLUMMER              )

FILD
DAVIS
AD. A551.

## ORDER

IT IS HEREBY ORDER that JOHNNIE PLUMMER cc#91-21451 be released from the custody of the Cook County Juvenile Detention Facility into the custody of Detectives Foley star#20450 and Clancy star#20395 of the Chicago Police Department Area 3 Violent Crimes on August 13, 1992 for the purpose of conducting criminal investigation unrelated to the pending criminal case.  Detectives Foley and Clancy will return JOHNNIE PLUMMER within 24 hours into the custody of the Cook County Juvenile Detention Facility. Detectives Foley and Clancy will not question JOHNNIE PLUMMER regarding his pending criminal case.

E
N
T
E
R:  _____
        Judge of the Circuit Court
             of Cook County

DATED: Aug 06, 1992

Sep 11, 2012   11:44 AM

STATEMENT OF

## Erica Frazier

Taken August 13, 1992 At 11:20 p.m.

At Area 3 Violent Crimes

Present ASA Mike Rogers

Detective Terry O'Conner

This statement taken regarding the Shooting

of Perrijean East which occurred on June 17, 1991

at 6258 S. Halstead at 12:30 a.m.

I understand I have the right to remain silent and that anything I say can be used against me in a court of law. I understand that I have the right to talk to a lawyer and have him present with me during questioning, and if I cannot afford to hire a lawyer one will be appointed by the court to represent me before any questioning. Understanding these rights, I wish to give a statement.

After indicating that she understood that Mike Rogers is an Assistant State's Attorney, a lawyer and Prosecutor and not her lawyer, Erica Frazier agreed to give the following statement which is a summary and not word for word.

Erica Frazier is 21 years old, her birthdate is December 4, 1970 and she can read and write english.

On June 16, 1991 at about 9:00 p.m. Erica Frazier and her friend Patrice Fitzpatrick were with Malcolm Sharkey and smokey who is named Johnny Plummer. Erica and Patrice were going to go home, but Smokey and Malcolm Sharkey

asked them to wait. Malcolm an Smokey told (asked) Erica and Patrice that they would walk the girls home after they got off working security for a drug dealer at 59th & Union.

While Erica and Patrice waited, Smokey showed them a revolver that UR [Smokey & Malcolm] they had hidden, MR ERZIER for security job. GF Malcolm and Smokey got off "work," they started walking Erica and Patrice home down Halstead street. EF/MR While Erica and Patrice waited, Malcolm and Smokey MR/EF told Patrice and Erica th GF/MR talked about robbing "BDs" a rival gang members an who would be driving on Halstead MR Other street. The two of them agreed that if they caught anyone at a stop light they would rob them and take their MR of [cars &] chains. They said they wanted "bone" chains which are Herringbone style gold chains.

Smokey and Malcolm got off work. Smokey and Malcolm walked Erica and Patrice up Halstead street from 59th to 62nd. It was around 11:15 p.m. when Patrice and Erica "left" Malcolm and Smokey at 62nd & Halstead. Erica and Patrice walked home.

The next morning on June 17, 1991

Erica Frazier
D.T. Olanis                    Mike Rogan AST

SEP 19 2012   9:44 AM

1. Malcolm Sharkey came over to Erica's house. It was around 11:30 in the morning when Malcolm came over. Erica and Malcolm talked in her room. Malcolm said "guess what happened last night. After we left you Smokey tried to rob a lady and she rolled the window up on him. Then Smokey shot her." Erica told Malcolm "that's my cousin who got shot." EF MR Malcolm Erica was playing with Malcolm. Malcom said "for real and" MR EF hung around for a while, although MR Erica and Malcolm did not discuss the shooting any more.

A couple of days later Malcolm and Smokey came over to Erica's house. Erica told "Smokey I'm calling the police you killed my cousin the other day." Smokey said "that's your cousin for real." Smokey looked scared. He said he was sorry. Then Erica said she just playing. Erica dropped the subject.

When Erica learned who the victim was she decided to come forward and tell the police what she knew. Since she has been at the police station Erica has been treated well by the police and ASA Rogers. Erica Frazier has reviewed this statement and states

Erica Frazier
Det. T. Ollivan          Mike Rogers   ASA

Sep 13, 2012   9:11:44 AM

That it is a truthfull account of what she told the police and ASA Rogers. Erica Frazier hasnt received any threats or promises in exchange for making this statement.

Erica Frazier

Mike Rogers — ASA

Det. T. Clemmer

```
 1   STATE OF ILLINOIS )
                      )  SS:
 2   COUNTY OF C O O K )

 3

          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
 4           COUNTY DEPARTMENT-CRIMINAL DIVISION

 5   THE PEOPLE OF THE   )
     STATE OF ILLINOIS,  )
 6                       )
         versus          )   Case No. 92-20236-01
 7                       )
     JOHNNIE PLUMMER.     )
 8

 9      BE IT REMEMBERED that this cause came on for

10   hearing on the 17th day of August, 1992, before

11   the Honorable ROBERT BASTONE, Judge of said court.

12        PRESENT:

13        HON. RICHARD A. DEVINE,
              State's Attorney of Cook County, by
14        MR. MATTHEW MAHONEY,
              Assistant State's Attorney,
15            appeared on behalf of the People,

16

17        MS. RITA FRY,
              Public Defender of Cook County, by
18        MR. TONY EBEN,
              Assistant Public Defender,
19            appeared on behalf of the Defendant.

20

21
     Patrice Ann Houlf
22   Official Court Reporter
     1500 Maybrook Square, Room 237
23   Maywood, Illinois 60152
     708)865-6160
24
```

```
 1              THE CLERK:  Johnny Plummer.

 2              THE COURT:  Are you Johnny Plummer?

 3              MR. PLUMMER:  Yes.

 4              THE COURT:  It looks like you have been

 5    charged with the offense of first degree murder at

 6    6258 South Halsted.  And you're in court today for

 7    preliminary hearing.

 8              Have you hired an attorney, Mr. Plummer?

 9              MR. PLUMMER:  No.

10              THE COURT:  This is Mr. Eben next to you.

11    He's a lawyer from the Public Defender's Office.

12    Since he represents you on another matter, he'll act

13    as your lawyer today on this charge.

14              Matt, are you ready for hearing today?

15              MR. MAHONEY:  No, we are seeking a

16    continuance.

17              THE COURT:  What's the status of the other

18    matter?  Is that still in 66?

19              MR. EBEN:  That other case is pending in

20    front of Judge Gaughan.  I don't know what date it

21    is, but it may be in the next two weeks.  The case

22    has been pending in front of Judge Gaughan for some

23    time.

24              THE COURT:  It has?
```

B    3

```
1          MR. EBEN:  Yes.

2          THE COURT:  We'll set this matter down

3   Motion State for preliminary hearing.

4          September 2nd okay with you, Tony?

5          MR. EBEN:  Sure.

6          THE COURT:  A Wednesday.  Set it down

7   Motion State hearing for September the 2nd.

8          Bond was set by Judge Bowie at no bond,

9   which means that Mr. Plummer cannot make bond in

10  this murder charge until we have his hearing here on

11  September 2nd at 12:00.

12         I imagine there is something you want to

13  say about this.

14         MR. EBEN:  I would like to say this, Your

15  Honor, I have been representing John Plummer for a

16  long time.  The case has been pending in Judge

17  Gaughan's many months, probably a year.

18         My understanding is that the police

19  department came in before Your Honor on August 6th,

20  1992, to have an order signed requiring that Johnny

21  be released to their control on August 13th, 1992.

22         I have tendered this order to you, and

23  I'll tender it to you again, if you need to peruse

24  it.
```

B      4

1       I happened to be in Branch 66 on the 6th.

2 I was not aware any police officers were approaching

3 the Court regarding this matter. Certainly, the

4 State knows I'm involved in the case and our office

5 is involved in the case.

6       I have absolutely no information that from

7 August 6th until the 13th anyone ever contacted us

8 about the subsequent investigation or the purpose

9 for which John was being taken out.

10       Your Honor, as you well know, many of us

11 from our office will indicate in closing remarks to

12 you regarding any individual defendant that we

13 request that no police officer speak to our client

14 about cases which are pending at this time or any

15 other investigation.

16       It concerned me greatly on that particular

17 days these officers came in to you with an order I

18 never received a copy of it until I got one from the

19 Audy Home this morning and obtained release of this

20 young man, who has been told time after time after

21 time not to talk to the police department about this

22 case or any pending case.

23       THE COURT: Are you indicating there was a

24 statement made?

B    5

```
 1          MR. EBEN:  My belief at this time there
 2    may have been a statement.
 3          THE COURT:  I apologize because in all
 4    honesty I did not recognize his name when I signed
 5    the order.  It was indicated to me he was in custody
 6    at a juvenile facility, not he was in custody on an
 7    adult matter that was pending.
 8          And I signed this order because the
 9    officers told me he would go to Area 3 for lineup
10    purposes.  Even though it says for purpose of
11    conducting a criminal investigation, I signed the
12    order.
13          It was in the morning before 66 began.  I
14    had no idea it was about a murder and that he was in
15    custody on another murder.  If I had known that, I
16    would have waited until 12:00.  In the future I'll
17    make sure I do.
18          MR. EBEN:  May I also say at this time
19    it's Johnnie's desire that he not speak to any
20    police officers about any of these cases which are
21    pending at this time.  Is that correct?
22          MR. PLUMMER:  Yes.
23          MR. EBEN:  And I would also ask, Your
24    Honor, the order specifically say Detectives Foley
```

1   and Clancy from Area 3 are not to attempt to contact
2   any client any further about the cases for which
3   he's now charged or any further investigations.
4           THE COURT:  I'm not sure I can order them
5   specifically.  I am ordering the State's Attorney's
6   Office to be made aware the Detectives Division,
7   including those two detectives.
8           Now Mr. Plummer is charged with two
9   matters, and you are his attorney of record.  They
10  should not speak to him since he's indicating he
11  does not wish to speak to these officers until they
12  contact you first.
13          Make sure you do that, Matt.
14          MR. MAHONEY:  Yes.
15          MR. EBEN:  I file my appearance.
16          THE COURT:  Leave granted to file your
17  appearance today.
18          MR. EBEN:  And my client demands trial.
19          THE COURT:  Demand for trial.
20                  (WHICH WERE ALL THE PROCEEDINGS
21                   HAD IN THE ABOVE-ENTITLED CAUSE
22                   ON SAID DATE.)
23
24

1RE:   PEOPLE VS JOHNNIE PLUMMER, G.J. #1111

<u>ARR. DATE:  9-25-92</u>

<u>92 CR 20236</u>

BEFORE THE GRAND JURY OF COOK COUNTY,

AUGUST, 1992.

Transcript of the testimony taken in the
above-entitled matter before the Grand Jury of Cook County
on the 1st day of September, 1992.

PRESENT:  MR. MATT MAHONEY,
ASSISTANT STATE'S ATTORNEY.

REPORTED BY:  BARBARA JOY MASI, CSR.
OFFICIAL COURT REPORTER.

<u>LIST OF WITNESSES:</u>                    <u>PAGE NO:</u>

DET. CLANCY                                    2

MR. MAHONEY:  Matt Mahoney, ladies and gentlemen of the Grand Jury, I'm Assistant State's Attorney Matt Mahoney of the Homicide Sex Unit.  We are seeking true bill of indictment against Johnnie Plummer for the offenses of murder, attempt armed robbery, vehicular invasion and armed violence committed against PerriJean East on or about June 17, 1991, near 6258 South Halsted in Chicago, Cook County, Illinois.

The Grand Jury number is August 1111.

The Grand Jury has the right to subpoena and question any person against whom the State's Attorney is seeking a bill of indictment, or any other person, and to obtain and examine any documents or transcripts relevant to the matter being prosecuted by the State's Attorney.

DET. CLANCY,

called as a witness, having been first duly sworn, was examined and testified as follows, to-wit:

EXAMINATION BY:

MR. MAHONEY:

MR. MAHONEY:  State your name and spell your last name and give your star and unit of assignment.

A    Michael Clancy, star 20395, area 3 Violent Crimes.

A-2

Q       Detective, have you been previously sworn?

A       Yes, I have.

Q       Were you assigned to investigate the murder and attempt armed robbery committed by Johnnie Plummer against PerriJean East on or about June 17, 1991?

A       Yes, I was.

Q       Did your investigation show that PerriJean East was alive prior to 12:30 A.M. on June 17, 1991?

A       Yes, that's correct.

Q       And did your investigationshow that PerriJean East was in the area of 6258 South Halsted at 12:30 A.M. on June 17, 1991?

A       Yes, it does.

Q       Did your investigationshow that the defendant, Johnnie Plummer, was also present at that time?

A       Yes.

Q       Did your investigation show that the defendant was armed with a gun?

A       Yes.

Q       The victim was unarmed?

A       Yes.

Q       The defendant shot the victim?

A       Yes, that's correct.

A-3

Q     The medical examiner's office determined that PerriJean East died as a result of gun shot wounds to te head?

A     Yes.

Q     The victim died on June 17,1991?

A     Yes, that's correct.

Q     Did your investigation show that the defendant, with the intent to commit armed robbery, took a substantial step towards the commission of the offense of armed robbery by pointing a gun at PerriJean East's head and saying give me the chain?

A     That's correct.

Q     Did your investigation show that the defendant, by force, and without lawful justification reached into the interior of a motor vehicle while that motor vehicle was occupied by PerriJean East with the intent to commit armed robbery therein?

A     That's correct.

Q     Did your investigation show that the defendant admitted these offenses to police and Assistant State's Attorney?

A     Yes.

Q     All of these things happened in Cook County?

A     Yes, they did.

Q     No further questions.

A JUROR:  This happened in 1991, you said the defendant admitted these allegations, was the admission recently?

A     Yes it was.  At the time of his arrest.

A JUROR:  At the time of his arrest and his arrest took place?

A     Just recently.

                    (WITNESS EXCUSED:)

              (Whereupon the Grand Jury was left
              alone to deliberate, after which the
              following proceedings were had:)

THE FOREPERSON:  True bill.

              (Whereupon said matter was continued
              for arraignment before the Presiding
              Judge of Criminal Division:)

Sep 29, 2012   8:12:44AM

THE CLERK:  People of the State of Illinois versus
Johnny Plummer.

THE COURT:  All right.  This cause is resumed.
This is People versus Johnny Plummer, 92 CR 20236.
The Defendant is present in open court.  Ms. Herigodt
is present on his behalf.  The People are present as
well.

The Defendant has filed a Motion to
Suppress Statements and, thereafter, Supplemental
Motion to Suppress Statements.  This Court is
thoroughly conversant with the contents of these two
(2) motions.  All of the evidence has been completed
in this protracted motion; am I correct?

MR. MURRAY:  Yes.

MS. HERIGODT:  Yes.

THE COURT:  I will have the benefit of counsels'
arguments with reference to this motion.

State, the onus is on you.

MR. MURRAY:  Thank you, Judge.

Your Honor, I will divide my
arguments generally into three (3) areas, first,
dealing with some legal issues; second, dealing with
the presence of the youth officer or parent; and,
finally, the physical or mental coercion.  The two (2)

```
1    final areas will be more lengthy than the first part
2    of the argument.
3                    Your Honor, counsel in her motion
4    makes a couple of arguments regarding whether
5    Mr. Plummer's attorney on his pending murder case was
6    notified.  I would cite to your Honor on that case
7    law, McNeil versus Wisconsin.  That case clearly
8    states that the right to an attorney is an offense
9    specific.  Mr. Plummer had an attorney on that first
10   pending case.  The second case, the police officers
11   investigating the second separate crime, in that
12   situation, there is no need to call the attorney from
13   the first case.  Moreover, if you look at the
14   surrounding facts in this area, at this time, there
15   were no new adversary proceedings and, when the
16   officers got the Order to release Mr. Plummer from the
17   Juvenile Detention Center to interview him, there was
18   no involvement by the State's Attorney's office at
19   that time.  They weren't called until later when
20   interviews were taking place, much later in fact, so
21   there is no intent to commence adversarial
22   proceedings, so I believe the case law of McNeil
23   controls that area.  Also, Judge, the Presiding Chief
24   Judge, Judge Bastone, did not hesitate to sign this
```

All the source of the allegations comes from him and no one else.

Judge, considering the sum of the totality of the evidence here, we ask that you deny the Defendant's Motion to Suppress Statements.

THE COURT: Thank you.

You may proceed, Ms. Herigodt.

MS. HERIGODT: Your Honor, we have raised a great many issues in this Motion to Suppress Statements aside from probably the central issue that Johnny Plummer was coerced into giving a handwritten statement by police officers, who beat him with -- I don't care what you call it, whether you call it a stick, bat, or paddle -- but they beat him into giving that statement. Aside from that crucial issue, which is where most of the evidence in this case centers on, we have raised certain other legal issues. We have complained, Judge, about the very way in which Mr. Plummer was brought to Area 3. We are saying that that violated his rights, that that violated the State Habeus Corpus Act.

THE COURT: In what respect, counsel?

MS. HERIGODT: Judge, if I could back up a bit. Mr. Murray has made the statement that the State's

Sep 13 2012   11:44 AM

Attorney's office had no involvement in this matter
until a State's Attorney appeared in the Area.  Let's
go back.  The State's Attorney's involvement in this
case was right from the beginning.  If you recall,
through I believe it was Detective Foley's testimony,
months, months, before Mr. Plummer was by court order
brought from Area 3, or from the Audy Home to Area 3,
the Cook County State's Attorney's office began their
investigation of this matter.  They interviewed a
Malcolm Sharkey, an inmate of the Juvenile Division of
the Illinois Department of Corrections.  They took a
written statement from Mr. Malcolm Sharkey.  A State's
Attorney was present for that statement.  The
statement was also attended to by Detective Foley and
Detective Clancy.  It was then, Judge, that
Mr. Plummer became a target of the investigation.

                    What other State's Attorney's
involvement do we have in this case?  We have the
State's Attorney's office preparing a court order with
a pending case number on it, Mr. Plummer's pending
case, requesting that Judge Bastone order his release
from the Audy Home to Area 3 for the purpose of their
investigation.  That Order was prepared by the
State's Attorney's office, Judge.  It was then brought

1  to Judge Bastone. It had the caption of the other

2  case on it. That case was not pending before

3  Judge Bastone. That case was pending in the Circuit

4  Court of Cook County before the Honorable Judge

5  Vincent Gaughan. Mr. Plummer was represented by

6  counsel on that case. Mr. Plummer's attorney was not

7  notified that the State's Attorney's office was

8  preparing this Order. It was done completely

9  ex-parte. I am not faulting Judge Bastone because

10 apparently this was the practice at the time, but the

11 fact that it is the practice doesn't make it a legal

12 one, especially when we have a Statute clearly on

13 point, and I am referring to the Habeus Corpus Act at

14 that time in 1992, Judge, and it was Chapter 110,

15 Paragraph 10/130-131. "Any person being committed to

16 any prison or in the custody of any sheriff --

17 Mr. Plummer was in the custody of the Sheriff of

18 Cook County housed in the Audy Home -- shall not be

19 removed therefrom into any other prison or custody

20 unless it is done by Habeus Corpus Order." Clearly,

21 there is no Habeus Corpus Order in this case. "Or

22 some other legal process." That is what is at issue

23 here, Judge. Is this the appropriate legal process?

24 We argue that it is not, Judge. It is done ex-parte.

1   It is done before a Judge who does not have

2   jurisdiction of the matter.  It is done on a case

3   where the Defendant is represented by counsel and

4   counsel is not notified.  That is why we brought all

5   those facts forward because we believe that this does

6   not constitute the type of legal process envisioned by

7   this particular Statute, so, right from the very

8   beginning, Judge, we are arguing that Mr. Plummer was

9   illegally brought to Area 3 from the Audy Home, and,

10  as a consequence of that and the treatment he received

11  there and all the other issues involving his Juvenile

12  Court rights, Judge, that his statement should be

13  suppressed.

14              Let's step back a minute, Judge.

15  Why do these officers need him transferred from the

16  Audy Home to Area 3?  Mr. Franklin, the Acting

17  Director of the Audy Home, says he allows Detectives

18  in to interview inmates.  Certainly, those Detectives

19  could have gone there in the security of the Audy Home

20  where Mr. Plummer was admitted to interview him.  They

21  didn't need to put him in a lineup.  You never heard

22  about a lineup.  He was sought for interrogation.  Why

23  go through all this problem of removing him from the

24  Audy Home to Area 3?  It is to get him on their own

the circumstances of everything going on, trying to find youth officers, trying to go out and find witnesses, it wasn't done to violate his rights. It wasn't done to bear undue influence on him. It was done to try to make a thorough investigation to make sure that the person ultimately charged would in fact be the correct person, and, Judge, in those circumstances, Judge, I believe that we have shown to you that these statements were voluntarily given, and I would ask that you deny the Motion to Suppress Statements.

THE COURT: Thank you.

The arguments in this case have been completed. This has been a protracted Motion. I have had the opportunity to observe the witnesses over the many times this case has been before this Court. I have had the opportunity to consider their testimony, and I have considered their testimony in light of all of the evidence adduced. I have examined the photographs in question. As I have said before, I have had the benefit of listening to the arguments, very convincing arguments, of all three (3) counsel. I have resolved the issue of credibility, and I am going to rule as a matter of fact as follows:

1      Based upon a totality of all of the
2   considerations I have just indicated, I do find that
3   on August 13, 1992 at 9 A.M. the Defendant was signed
4   out of the Juvenile Detention Center and turned over
5   to two (2) members of the Chicago Police Department
6   pursuant to an Order of Court.  I find that the
7   Defendant was not injured when he was delivered to
8   those Chicago police officers, and, in this context, I
9   have considered the testimony of Aaron Johnson, a
10  staff member of 31 years at the Juvenile Detention
11  Center, who delivered the Defendant to the said police
12  officers, and that of John Whitlow, also a member of
13  the staff of the Juvenile Detention Center.  Both of
14  these individuals testified that there was no marks or
15  injuries that they observed upon this Defendant.
16      I further find that from 9 A.M. on
17  August 13, 1992 until 11:40 A.M. on August 14, 1992,
18  the Defendant was in the custody of the Chicago Police
19  Department.
20      I further find that the Defendant
21  was returned to the Juvenile Detention Center on
22  August 14, 1992 at 11:40 A.M. by the same officers who
23  received him on August 13, 1992.  I further find that
24  on his return to the Juvenile Detention Center, the

1    Defendant claimed to be beaten by the Chicago Police

2    Department while in their custody.

3                        There was elicited the testimony of

4    John Whitlow, Aaron Johnson, Robert Franklin,

5    Licensed Nurse Pettis King, and Dr. Rao.

6    Robert Franklin is the Administrative Assistant at the

7    Juvenile Detention Center.  He said he observed deep

8    bruises to the Defendant's back.  He said he informed

9    Nurse King, who documented and assessed these injuries

10   that he observed.

11                       Nurse King observed the Defendant

12   and spoke to him at 1:20 P.M.  She observed, "gashes"

13   to his face and injuries to his leg, a swollen right

14   cheek, and a large scratch on his right leg, an

15   abrasion on the right lip, and two (2) "slanted marks

16   on his back."  He was referred to Dr. Rao.

17                       Dr. Rao is a Board-certified

18   pediatrician and a Board-certified Correctional Health

19   Care Specialist.  He is employed with the Juvenile

20   Detention Center on a part-time basis.  He saw this

21   Defendant on August 14, 1992 at 7:15 P.M.  The Doctor

22   made the following observations:  A superficial

23   abrasion to the right lower leg, a small ulcer to the

24   right side of the lip, lower lip, a contusion to the

Sep 11, 2012    11:44 AM

1    right cheek.  The contusion was raised and painful; a

2    linear contusion on the Defendant's back six (6)

3    inches long, one-half inch in width, and a quarter

4    deep.  That is one-quarter inch raised from the skin

5    surface.

6              Dr. Kirschner examined the

7    photographs, the Defendant's photographs,

8    Defendant's 3-C, and he examined this Defendant either

9    July or August of 1997.  Kirschner is a retired

10   Pathologist from the Medical Examiner's Office, and he

11   examined the photographs, as I have indicated.  He

12   concluded that the injuries to the Defendant's back

13   were two (2) diagonal marks, namely contusions.  He

14   opined that the marks were inflicted by a long thin

15   object.  There was no evidence of current scarring to

16   date.  Kirschner further was of the opinion that the

17   injuries to the Defendant's back were not accidentally

18   caused but were patterned parallel welts.  Dr. Rao

19   interestingly also calls the marks on the Defendant's

20   back welts.  Dr. Rao testified that the injuries to

21   the Defendant's back were consistent with injuries

22   caused by a stick, that the injuries observed on

23   8-14-92 were recent in origin, within 24 hours.

24   Dr. Rao's medical assessments were multiple injuries,

Sep 11,2012    11:44 AM

1    and he prescribed Tylenol for pain.

2                  John Whitlow testified on

3    August 14, 1992.  He observed the Defendant having a

4    skinned knee, busted lip, and welts on his back.  It

5    was he who sent him to Mr. Franklin.

6                  Aaron Johnson, who delivered the

7    Defendant initially to the police on August 13th and

8    received him from the police on August 14th, observed

9    swelling to the right eye.  The eyes were red.

10                 I find after very careful

11    consideration of all of the evidence that the evidence

12    clearly establishes that the Defendant received his

13    injuries while in the custody of the Chicago Police

14    Department.  I have considered People versus Lafraca

15    (phonetic), 4 Ill. 2d, page 261, particularly at 267,

16    and People versus Clark, 114 Ill. 2d, page 450, 1986.

17    These cases hold that, "Where it is clearly

18    established that the Defendant received injuries while

19    in police custody, the only issue is how and why they

20    were inflicted."  These courts hold that, "Something

21    more than a mere denial by the police of coercion is

22    required.  Under such circumstances, the burden of

23    establishing that the injuries were not administered

24    in order to obtain a confession can only be met by

Sep 11, 2012   11:44 AM